PIER 59 STUDIOS, L.P., Appellant, v CHELSEA PIERS, L.P., Respondent. [836 NYS2d 68]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered July 5, 2006, which denied plaintiff's motion to serve a fourth amended and supplemental complaint, and order, same court and Justice, entered September 13, 2006, which, insofar as appealable, denied plaintiff's motion for renewal of its motion to serve a fourth amended complaint, unanimously modified, on the law and the facts, to the extent

that the motion for leave to file a fourth amended complaint is granted, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered February 21, 2006, which denied plaintiff's motion for renewal/reargument of its prior motion for an order holding defendant in contempt of court, which motion was denied by the same court and Justice in an order entered August 25, 2005, unanimously dismissed, without costs.

This appeal arises from a long-standing landlord-tenant dispute, which has resulted in numerous court orders and three prior appeals to this Court.

On October 27, 1994, defendant Chelsea Piers L.P. (Chelsea Piers) subleased second-floor and third-floor loft space at Chelsea Piers to plaintiff Pier 59 Studios, L.P. (Pier 59) to be utilized as a fashion and photography studio, dining facility, outside roof deck and offices, pursuant to a written sublease. By letter dated November 19, 1996, Pier 59 and Chelsea Piers agreed to expand the type of use that could be made of the premises in order for Pier 59 to run nonfashion special events, with Pier 59 agreeing to pay Chelsea Piers 7.5% of the gross revenues generated by the events. Pursuant to subsequent subleases, Pier 59 subleased additional space from Chelsea Piers.

Pier 59 ultimately sued Chelsea Piers for various violations of the subleases. Chelsea Piers asserted counterclaims alleging that Pier 59 breached the subleases, inter alia, by operating a public nightclub on its premises and erecting an unapproved "wooden roof deck." One of the major disputes between the parties involves a "fabric structure" which Pier 59 erected on its roof deck in 1999, which was described as a large two-story steel and aluminum-framed structure covered with fabric, including a large canopy.

On April 19, 2006, Pier 59 moved to serve a fourth amended complaint to specifically plead facts regarding Chelsea Piers' failure and refusal to provide the landlord's signatures and sign-offs for submission to New York City and other relevant governmental agencies of the applications, forms, plans and approval requests for the use of the premises that Pier 59 had submitted to Chelsea Piers, which, it alleged, breached Chelsea Piers' express and implied obligations to Pier 59. It also sought to add a cause of action for breach of the implied covenant of good faith and fair dealing and sought punitive damages. In a supporting affidavit, the president of Pier 59, relying principally on the parties' July 15, 2003 letter agreement and subsequent e-mail, argued that Chelsea Piers had previously agreed to

permit Pier 59 to make the alterations and to provide the landlord's signatures and sign-offs for the appropriate permits.

The court denied the motion to amend, holding that the proposed fourth amended complaint was lacking in merit in that it alleged that Chelsea Piers breached purported agreements to sign off on applications to legalize a roof deck. The court noted that it had already ruled in prior decisions that Chelsea Piers had no obligation to do so under the sublease between the parties. It held that the allegedly new evidence of postsublease written agreements by Chelsea Piers—a July 15, 2003 letter and self-serving e-mail from a Pier 59 employee— did not satisfy the sublease's requirement of a writing signed by Chelsea Piers agreeing to change the terms of the sublease. The court added that Pier 59 had not presented any evidence that Chelsea Piers agreed to sign off on approvals for the roof deck and that the proposed amendment's general allegations that Chelsea Piers violated the covenant of good faith and fair dealing had already been rejected by this Court (27 AD3d 217 [2006]).

Pier 59 moved to reargue or renew the motion to amend the complaint. In support, counsel for Pier 59 alleged that the court overlooked critical facts and controlling law in denying Pier 59's motion, since the issue of the roof deck was not the subject of the amendment or the motion, since the court did not apparently review the evidence establishing that Chelsea Piers consented in writing, orally and by its conduct to the canopy and its additions, which are located on the roof deck, and since, contrary to controlling authority, the court improperly made factual determinations of disputed facts on the motion to amend.

Counsel also contended that the court failed to address our March 2006 holding that there were issues of fact as to whether Chelsea Piers approved of Pier 59's alterations and frustrated Pier 59's attempts to cure the Building Code violations.

In the third order from which Pier 59 appeals, the court denied Pier 59's motion, holding "(m)ovant has not demonstrated that the court overlooked any controlling principle of law or presented any new evidence that was not available at the time of the original motion. The court's statement that plaintiff did not present evidence 'that Chelsea Piers agreed to sign off on approvals for the roof deck,' when read in context, was clearly a reference to approvals of the alterations to the roof deck that are in dispute. Accordingly, the court adhered to its original determination." This was error.

"Leave to amend the pleadings shall be freely given absent prejudice or surprise resulting directly from the delay" (*Fahey v*

*County of Ontario*, 44 NY2d 934, 935 [1978] [internal quotation marks and citations omitted]). Furthermore, in considering the proposed amendment, "the court should examine, but need not decide, the merits of the proposed new pleading unless it is patently insufficient on its face. Once a prima facie basis for the amendment has been established, that should end the inquiry, even in the face of a rebuttal that might provide the ground for a subsequent motion for summary judgment" (*Hospital for Joint Diseases Orthopaedic Inst. v Katsikis Envtl. Contrs.*, 173 AD2d 210, 210 [1991] [citations omitted]).

Pier 59 clearly put forth sufficient evidence to establish that the proposed amendment was not "specious" (*Nab-Tern Constructors v City of New York*, 123 AD2d 571, 572-573 [1986]). Unfortunately, the motion court employed the wrong standard of review in analyzing the proposed amendment.

The court focused on the ultimate issue to be decided at some point in the litigation: whether the postsublease agreements bound Chelsea Piers and Pier 59. The court, sua sponte, ruled that the July 15 letter and the subsequent e-mail "did not satisfy the sublease's requirement of a writing signed by Chelsea Piers agreeing to change the terms of the sublease." The court erred in construing the ultimate effect of only two items of proof raised by Pier 59 vis-à-vis the subleases rather than deciding whether Pier 59 had made a prima facie showing that the proposed amendment was not specious. Indeed, in essentially granting Chelsea Piers summary judgment on that issue, the court overlooked all of the other evidence presented by Pier 59.

Pier 59 also contends that the court erred in denying its motions for renewal of its contempt motion. The appeal from the order denying its motion for contempt must be dismissed since, as the court found, the motions contained no new or previously unavailable facts and were, therefore, motions for reargument, not renewal. No appeal lies from the denial of a motion for reargument (*see Northern Assur. Co. of Am. v Holden*, 179 AD2d 569 [1992]). In addition, although Pier 59 filed a notice of appeal from the denial of its contempt motion, it failed to perfect that appeal. Pier 59 is precluded from pursuing an appeal from a motion for reargument or renewal after "allowing the first [appeal] to die on the vine" (*Rubeo v National Grange Mut. Ins. Co.*, 93 NY2d 750, 755 [1999]). Concur—Tom, J.P., Friedman, Sullivan, Nardelli and Catterson, JJ.